1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACOB KRAKAUER, individually and
on behalf of all others similarly situated,

                     Plaintiff,

    v.

RECREATIONAL EQUIPMENT, INC.,

                     Defendant.

CASE NO. C22-5830 BHS

ORDER

      This matter is before the Court on Defendant Recreational Equipment Inc.'s (REI)

Motion to Dismiss Plaintiff Jacob Krakauer's First Amended Complaint, Dkt. 23.

Krakauer fails to establish that he has Article III standing and fails to meet the heightened

pleading requirements for fraud claims. REI's motion to dismiss is GRANTED.

## I.   BACKGROUND

      REI is an outdoor gear and clothing apparel company. Dkt. 19. It sells brand-name

merchandise and products under its "REI" and "Co-op" labels. Dkt. 23 at 14. In the

spring of 2020, Krakauer purchased an REI Co-op XeroDry GTX Jacket. Before

purchasing this jacket, he "reviewed the labeling, packaging, and marketing materials of

his Product." Dkt. 19, ¶ 23. He contends that his decision to purchase the coat was

motivated by "REI's reputation and in the belief that REI only sells Products that are safe and sustainable." *Id.*

Krakauer now argues that REI's marketing is misleading. He asserts his jacket is neither safe nor sustainable but rather poses a significant safety risk to his health and the environment because it contains heightened levels of organic fluorine, which is "indicative of unsafe per- and polyfluoroalkyl substances ('PFAS')." Dkt. 19 ¶1. He sued REI, alleging that REI failed to inform consumers such as himself[1] that his "XeroDry" coat as well as assorted other REI brand rain gear,[2] contain heightened levels of organic fluorine indicative of PFAS. Dkt. 19 ¶1.

Krakauer does not allege that he was physically harmed by his jacket, but rather that he suffered an economic injury in that he would not have purchased the raincoat, or would have paid less for it, had REI adequately disclosed the presence of PFAS. Dkt. 29 at 2. The "gravamen" of Krakauer's case is REI's "marketing representations and omissions." *Id.* at 17. He alleges that REI fraudulently omitted the presence of PFAS on the products' labeling and packaging.

---

[1] Though Krakauer filed his complaint as a putative class action, the Court does not assess whether there is class standing nor whether class certification is warranted in this order. It merely acknowledges that his present complaint seeks to represent a class of similarly situated consumers and, consequently, products that he did not purchase.

[2] The Products include REI Co-Op XeroDry GTX Jacket (Men's), REI Co-Op Westwinds GTX Jacket (Women's), REI Co-Op Drypoint GTX Jacket (Men's), REI Co-Op Rainwall Rain Jacket (Kids), and REI Co-Op Savanna Trails Pants (Men's), amongst other waterproof products and Plaintiffs reserved the right to amend to add additional products pending discovery. Dkt. 19 FAC at 1 n. 1.

Krakauer asserts claims for (1) violation of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW; (2) breach of implied warranty; (3) breach of express warranty; (4) fraud; (5) constructive fraud; (6) fraudulent inducement; (7) money had and received; (8) fraudulent omission or concealment; (9) fraudulent misrepresentation; (10) negligent misrepresentation; (11) quasi-contract / unjust enrichment; (12) negligent failure to warn; and (13) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. Dkt. 19 at 5–6.

REI moves to dismiss Krakauer's claims. It argues that his complaint fails to plausibly allege an injury-in-fact, and that he consequently does not have standing to assert his claims. Dkt. 23. It asks the Court to dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). It argues that dismissal is also warranted under Rule 12(b)(6) because Krakauer failed to provide enough facts to state a plausible claim for relief and had far too few facts to meet the heightened pleading standard for fraud claims. Because the Court agrees that Krakauer lacks standing and failed to state a claim under Rule 12(b)(6), it does not reach the additional arguments REI makes as to why Krakauer's common law claims fail. *See* Dkt. 23 at 34–37.

To assess the deficiencies in Krakauer's current complaint, a brief explanation of PFAS and the representations from REI he claims misled him is included below.

**A.    PFAS**

PFAS are "a group of synthetic chemicals" which plaintiff asserts are "known to be harmful to both the environment and humans." Dkt. 29 at 9. Clothing manufacturers often use PFAS on textiles to make them water repellant and breathable. Dkt. 19, ¶ 35.

PFAS are typically divided into two groups: long-chain and short-chain. Krakauer asserts that both long and short chain are "resistant to environmental and metabolic degradation" and that both pose health concerns including cancer and harm to reproduction as well as harm to the environment. *Id*. ¶¶ 95, 97. He asserts that "[b]ecause PFAS persist and accumulate over time, they are harmful even at very low levels." *Id*. ¶ 6.

In general, long chain PFAS are more widely recognized as dangerous. The European Union has banned them and "major U.S. manufacturers" have phased out their use. Dkt. 19, ¶ 33. The toxicity of short chain PFAS is more varied. Krakauer asserts "that research suggests that both long-chain and short-chain PFAS have similar levels of toxicity." *Id*. ¶ 34. Sources he discusses acknowledge that some short chain PFAS are considered dangerous while others are allowed in products. For example, Krakauer points to the fact that some REI gear is "bluesign®" certified, but that "bluesign currently only restricts 140 of 9,000 known manufactured PFAS." *Id*. ¶ 63. Sources he relies on focus on two specific short chain PFAS, perfluorooctanoic acid (PFOA) and perfluorooctane sulfonic acid (PFOS), as particularly dangerous. *Id*. ¶¶ 16, 74. Krakauer notes that scientists have acknowledged that "some PFAS are considered of low health concern" but asserts that other scientists argue that even these low risk PFAS may produce "high concern" PFAS during their "lifecycle." *Id*. ¶ 94.

**B.      Representations Krakauer relied on before deciding to purchase his raincoat**

Krakauer alleges that his decision to purchase the XeroDry raincoat was "motivated by REI's reputation and in the belief that REI only sells Products that are safe

and sustainable," Dkt. 19, ¶ 23, as well as "material misrepresentations" and "omissions" in REI marketing that include the following:

## 1.   REI's statements regarding PFAS

REI made statements about PFAS on its "Product Impact" page of its website where it discloses: "REI has eliminated long-chain PFAS DWR treatments from the REI Co-op brand." Dkt. 19, ¶ 55. The next sentence discloses that some REI products contain short-chain PFAS: "We use short-chain PFAS treatments where viable alternatives do not yet exist, and we continue to expand the use of non-fluorinated options." *Id*. Krakauer asserts that REI's statement that it eliminated long chain PFAS "was important to his decision" to purchase his coat. *Id*. ¶55.

## 2.   Tags for the XeroDry raincoat

Krakauer alleges the tags associated with Krakauer's XeroDry Raincoat fraudulently omit any reference to PFAS. The tags read:

No. 137308, 135551

**REI Co-op**

**XeroDry
GTX Jacket**

**Key Features**

GORE-TEX® Paclite® shell is windproof, waterproof and extremely breathable

Durable water repellent (DWR) finish sheds drizzle

Articulation throughout for ease of movement



Dkt. 23 at 18–19.

### 3. REI's certifications for various products

Krakauer asserts that he relied on the fact that REI has various certifications from outside organizations to form his belief that his raincoat lacked PFAS. For example, REI advertises that its products are made in a "Fair Trade Certified™ factory." Dkt. 19, ¶ 56. Fair Trade Certified focuses on "[s]afe working conditions" and "[e]nvironmental protection." *Id*. ¶ 59. Krakauer does not allege that Fair Trade makes any representations about PFAS. His belief that his jacket did not have PFAS was also aided by the fact that REI is a part of the "Sustainable Apparel Coalition," which helps "retailers and

1  manufacturers to measure their environmental and social impacts at each stage of the

2  value chain." *Id.* ¶ 9.

3       He also he relied on the fact that some REI products are bluesign® certified.

4  bluesign® is a certifier that claims to "unite[ ]the entire textile value chain to reduce

5  impacts on people and planet." Dkt. 19, ¶ 63. He acknowledges that "bluesign currently

6  only restricts 140 of 9,000 known manufactured PFAS" and that, "[w]hile bluesign has

7  committed to phasing out all bluesign-approved PFAS, this will not occur until July 2023

8  at the earliest." *Id.*[3] He does not allege that his XeroDry raincoat is bluesign® certified.

9       The Court addresses the current complaint's deficiencies under Federal Rules of

10  Civil Procedure 12(b)(1) and 12(b)(6) below.

## II.   DISCUSSION

**A.   Krakauer lacks a sufficient injury for standing**

13       To establish standing, a plaintiff must demonstrate the irreducible constitutional

14  minimum of: (1) an injury-in-fact via "an invasion of a legally protected interest which is

15  (a) concrete and particularized, and (b) actual or imminent, not conjectural or

16  hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action

17  of the defendant"; and (3) redressability—that it is "likely, as opposed to merely

18  speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of*

19  *Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).

---

[3] The Court notes that the parties have not updated the record to clarify whether bluesign® in fact "phased out" its approved PFAS at the time of this order.

1      To survive a Rule 12(b)(1) facial attack on standing a plaintiff "must 'clearly . . .

2   allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

3   (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). At this stage, the Court

4   presumes to be true the factual allegations in the pleadings, and construes in favor of

5   plaintiff all reasonable inferences therefrom. *See Lujan*, 504 U.S. at 555

6      REI's motion focuses on the first element: injury-in-fact. "To establish an injury in

7   fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected

8   interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

9   hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "A 'concrete'

10   injury is one that 'actually exist[s],' meaning that it is 'real, and not abstract.'" *Arizona v.*

11   *Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 340). "A

12   quintessential injury-in-fact occurs when plaintiffs allege that they spent money that,

13   absent defendants' actions, they would not have spent." *Zeiger v. WellPet LLC*, 304 F.

14   Supp. 3d 837, 845 (N.D. Cal. 2018) (internal quotation marks and citations omitted);

15   *Moreno v. Vi-Jon, LLC*, No. 21-cv-21-56370, 2022 WL 17668457, at *1 (9th Cir. Dec.

16   14, 2022) (Mem.) ("[Plaintiff] alleged that he wouldn't have purchased or paid as much

17   for [defendant's] products if he had known the truth about their effectiveness. That is

18   sufficient for an Article III injury.").

19      Krakauer asserts that he suffered an economic injury. Specifically, he argues he

20   paid for his raincoat on the basis that it was sustainable and safe, as REI purportedly

21   represented, but that his raincoat was neither of those things because it contained

22   heightened levels of organic fluorine indicative of harmful PFAS. Dkt. 19, ¶¶ 1, 23. He

1    alleges that, had REI adequately disclosed the presence of PFAS, he would not have

2    purchased the raincoat, or would have paid less for it. Dkt. 29 at 10. Krakauer relies on

3    two theories to establish this economic injury: overpayment and benefit of the bargain.

4    Dkt. 29 at 10. Before delving into the specific requirements of each theory of injury, the

5    Court first analyzes whether Krakauer plausibly alleges that this raincoat contains PFAS.

6    Krakauer does not contest that doing so is a perquisite for both theories of standing.

7        **1.    Krakauer's allegations that his raincoat contains dangerous PFAS lack
     the factual content necessary to nudge his claims from possible to plausible**

8

9        Even accepting all facts in the complaint as true and drawing all reasonable

10   inferences in Krakauer's favor, the complaint fails to provide the court with enough facts

11   to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

12   U.S. 544, 555 (2007). Krakauer provides the following to support his assertion that his

13   raincoat and assorted REI products contain PFAS.

14       **a.    Toxic-Free Future Test**

15       A third-party test conducted by Toxic-Free Future (TFF) of various REI

16   waterproof apparel found that four[4] REI waterproof clothing articles contain dangerous

17   PFAS. *Id*. Dkt. 19 ¶¶11, 70. Some of the items contained both long chain and dangerous

18   short chain PFAS. *Id*. ¶ 70. TFF did not test Krakauer's actual jacket nor the same

19   "XeroDry" model he bought.

20   _____

21       [4] Krakauer asserts TFF found PFAS in these specific models: the REI Co-Op
     Westwinds GTX Jacket (Women's), REI Co-Op Drypoint GTX Jacket (Men's), REI Co-
     Op Rainwall Rain Jacket (Kids), and REI Co-Op Savanna Trails Pant (Men's). Dkt. 29 at
22   15.

1    Even though the TFF test showed dangerous PFAS in some products, Krakauer

2    failed to establish that his jacket is substantially similar to the apparel TFF tested.

3    Krakauer attempts to establish that his jacket is substantial similar by asserting that the

4    "Products are each manufactured by REI and consist of waterproof or water-resistant

5    fabric. Further, the Products are similarly marketed and sold, and the environmental

6    representations at issue apply to each Product.'" Dkt. 29 at 7 (internal quotation marks

7    omitted).

8    This is not enough. The cases Krakauer cites to support "substantial similarity"

9    illustrate why he falls short of establishing it in his case. In *Coe v. Philips Oral*

10   *Healthcare Inc.*, the court found a toothbrush the plaintiff bought was substantially

11   similar to the "class" toothbrushes because plaintiff provided facts showing "all Sonicare

12   Toothbrushes have the same shaft defect, which ultimately slows the speed of the brush

13   heads." 2014 WL 722501, at *4 (W.D. Wash. Feb. 24, 2014). In *Lohr v. Nissan N. Am.,*

14   *Inc.*, the court found that the plaintiff's sunroof was substantially similar to the class

15   sunroofs because she provided detailed facts showing each sunroof was made the same

16   way with "with tempered or laminated glass" and received similar complaints about

17   shattering. 2017 WL 1037555, at *4 (W.D. Wash. Mar. 17, 2017). The court in *Brown v.*

18   *Coty, Inc.* rejected an attempt by the plaintiff to assert that her mascara was substantially

19   similar to other mascaras of the same brand even though both contained PFAS:

20        Brown does not allege that Lash Blast and Clump Crusher are sufficiently
          similar. She claims that the two products are "CoverGirl waterproof
21        mascara products" that contain undisclosed PFAS. Compl. ¶¶ 89, 91. She
          does not allege that they contain the same PFAS at the same levels. She
22        acknowledges that PFAS differ in the type and severity of harm they may

produce and the level of exposure at which they are harmful. *See id.* ¶¶ 42 n.15, 44, 52, 53 n.18. Brown, therefore, has not alleged that the two products are sufficiently similar in that they raise nearly identical issues as to whether they are unsafe or unfit for ordinary use and whether Coty's omission was misleading.

No. 22 CIV. 2696 (AT), 2023 WL 2691581, at *3 (S.D.N.Y. Mar. 29, 2023).

Krakauer fails to provide the court with facts to establish that his raincoat is made of the same or substantially similar material as the apparel TFF tested. Instead, he asks the court to rely on the facts that the coats have the same brand and are all waterproof or water resistant. Without more facts regarding the material or chemical coating, the inference that his XeroDry jacket contains PFAS based on TFF's tests of different REI apparel is not reasonable. Consequently, the TFF test does not render Krakauer's allegation that his XeroDry jacket contained PFAS plausible.

### b. Organic fluorine testing commissioned by Krakauer's counsel

Krakauer's counsel commissioned organic fluorine testing on the same XeroDry model jacket that he owns as well as one other REI kid's jacket.[5] Krakauer asserts that "Levels over 100 ppm of organic fluorine have been determined by multiple organizations, as well as state regulators, to be indicative of PFAS." Dkt. 29 at 10; Dkt. 19, ¶¶ 67, 78. The test on the REI Co-Op XeroDry GTX Jacket "found 48,577 parts per million ('ppm') of organic fluorine, or more than 485 times the 100 ppm threshold." Dkt. 29 at 10. The test on REI's kid's jacket contained 2,240 ppm of organic fluorine. *Id.* In contrast to TFF, Krakauer did not conduct any further testing on the jackets to determine

---

[5] REI Co-Op "Rainwall Rain" jacket for kids. Dkt. 29 at 10.

1    if they in fact contained PFAS, let alone long chain PFAS or dangerous short chain

2    PFAS.

3         **c.      Center for Environmental Health**

4         Krakaeur also refers to "testing" by the "Center for Environmental Health" (CEH),

5    which he claims found that REI's raincoats "could expose individuals" to PFOA and

6    PFOS, both toxic short chain PFAS. Dkt. 19, ¶¶ 16, 86. He does not allege that CEH

7    tested the XeroDry raincoat model he purchased. Krakauer did not respond to REI's

8    assertion that this allegation springs from a "press release issued by another plaintiff

9    concerning a Notice of Violation of Proposition 65 that they sent to REI concerning two

10   unrelated REI raincoats" rather than a "test" as the complaint implies. Dkt. 23 at 16, 86.

11   CEH did file a "Notice of violation" of California Safe Drinking Water and Toxic

12   Enforcement Act. Dkt. 23 at 88. CEH has since abandoned its claim at no cost to REI.

13   Dkt. 30 at 16 (Ex. 1). In any event, Krakauer failed to establish that his XeroDry jacket is

14   substantially similar to the products that CEH allegedly tested.

15        **d.      Organic fluorine testing fails to plausibly allege that Krakauer's jacket
          contained dangerous PFAS**

16

17        Only one of the three pieces of evidence that Krakauer provides directly concerns

18   the XeroDry rain jacket that he purchased: the organic fluorine test that his counsel

19   commissioned. Courts are divided on whether organic fluorine testing is sufficient to

20   render an allegation that a product contains dangerous PFAS "plausible."

21        Some courts grant motions to dismiss where the plaintiff fails to specify the type

22   or amount of PFAS in the products or elaborate on the results of fluorine testing. In

1  *Andrews v. Procter & Gamble Co.*, the court determined that the plaintiff failed to

2  adequately allege that dental floss contained dangerous PFAS where the plaintiff's

3  allegation was based on screening the "floss for fluorine, which indicates that PFASs

4  might be present" but where "the floss was never tested for PFASs." No.

5  EDCV1900075AGSHKX, 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019). Krakauer

6  similarly fails to conduct a follow up test to confirm that his jacket contained PFAS after

7  tests revealed it had heightened levels of organic fluorine. In *Lowe v. Edgewell Pers.*

8  *Care Co.*, the court found that organic fluorine testing of tampons was failed to plausibly

9  allege that the tampons contained PFAS because the complaints were "silent as to the

10 amount of organic fluorine detected and whether that amount is negligible or significant."

11 No. 23-CV-00837-AMO, 2024 WL 150758, at *5 (N.D. Cal. Jan. 12, 2024). In contrast,

12 Krakauer successfully explains the significance of the heightened organic fluorine. But

13 unlike the defendant in *Lowe*, REI disclosed that it sometimes uses short chain PFAS

14 treatments could account for the heightened fluorine levels.

15     The court in *Brown v. Coty, Inc.*, found that a plaintiff failed to sufficiently plead

16 that her mascara was unsafe because she failed to

17     specify which PFAS were present in Lash Blast or at what levels. The
       complaint acknowledges that PFAS differ in the type and severity of harm
18     they may produce and the level of exposure at which they are harmful. As a
       result, Brown has not sufficiently pleaded that Lash Blast is actually unsafe
19     such that it is not of the 'quality and safety promised' at the time of
       purchase.
20
21 No. 22 CIV. 2696 (AT), 2023 WL 2691581, at *5 (S.D.N.Y. Mar. 29, 2023) (internal

22 citations omitted). Though Krakauer lacks explicit concessions that PFAS differ in

1    toxicity, the sources in his complaint make plain that not all PFAS are considered equally

2    toxic. For example, he acknowledges that only long chain PFAS are banned by the

3    European Union and "major U.S. manufacturers," and that bluesign® only bans certain

4    short chain PFAS. Dkt. 19, ¶¶ 33, 62.

5        Other courts find that elevated organic fluorine testing is sufficient or that

6    plaintiffs need not specify what PFAS are present in the product at the motion to dismiss

7    stage. For example, in *Hamman v. Cava Grp., Inc*., the court found that the plaintiff's use

8    of tests showing heightened levels organic fluorine was sufficient to plausibly allege the

9    presence of PFAS in the packaging for salad bowls: "their packaging contained

10   'heightened levels of organic fluorine,' an indicator of PFAS. This is plausible because

11   Plaintiffs allege that based on the Consumer Reports article, similar studies and reports,

12   and their own tests, the Products are likely to contain PFAS and that PFAS are dangerous

13   even in small quantities." No. 22-CV-593-MMA (MSB), 2023 WL 3450654, at *5 (S.D.

14   Cal. Feb. 8, 2023) (internal citations omitted). Unlike REI, the defendant there had not

15   disclosed the possibility that its products contained PFAS. In *Kanan v. Thinx Inc*., the

16   court determined that the fact that plaintiffs' test revealed short chain PFAS "above trace

17   amounts" was sufficient to survive a motion to dismiss for failure to comply with

18   heightened fraud pleading standards. No. CV2010341JVSJRPX, 2021 WL 4464200, at

19   *1 (C.D. Cal. June 23, 2021). It rejected defendant's argument that plaintiffs' failure to

20   reveal exactly what type and how much PFAS were detected was necessary.

21       Krakauer fails to plausibly allege that his jacket contains PFAS and is therefore

22   dangerous to either his health or the environment. The Court disagrees with REI's

1    contention that Krakauer needs to test the actual jacket he purchased for PFAS in order to

2    survive a motion to dismiss for lack of standing. *Solis v. Coty, Inc.,* No. 22-CV-0400-

3    BAS-NLS, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023) ("[T]o survive

4    Defendants' facial challenge, Solis need not explicitly allege the unit of Product she

5    purchased actually contained PFAS or that all units of the Product contain PFAS, but

6    may simply aver facts from which this Court can make such reasonable inferences.").

7    However, given REI's concession that it sometimes uses short chain PFAS treatments

8    and the fact that organic fluorine testing does not conclusively establish the presence of

9    PFAS, heightened levels of organic fluorine is not enough. Krakauer needs to have either

10   tested the same model of jacket he purchased for PFAS or establish that his jacket is

11   substantially similar to REI products that contain dangerous PFAS. To the extent that

12   Krakauer alleges that all PFAS are dangerous at any level sufficient to cause injury, this

13   allegation is conclusory and contradicted by some of the sources that Krakauer himself

14   cites. *See, e.g.*, Dkt. 19, ¶ 63 (alleging that bluesign® certification only restricts 140 of

15   9,000 known manufactured PFAS). His assertion that PFAS are dangerous "even at very

16   low levels" is too vague to support his claim. Dkt. 19, ¶ 3. It leaves the Court without a

17   metric to assess whether his jacket is dangerous.

18          In sum, Krakauer fails to plausibly allege that his raincoat contains PFAS let alone

19   PFAS at a level sufficient to cause an injury. He consequently lacks standing under rule

20   12(b)(1). Nevertheless, the Court addresses his two theories of injury below in the

21   interest of streamlining issues if Krakauer submits a second amended complaint.

22

### 2.    Krakauer fails to establish injury-in-fact through overpayment

Krakauer articulates his injury via overpayment as follows: "[H]ad Defendant disclosed the presence of PFAS in the Products' labeling, then Plaintiff would not have purchased the Products, or would have paid less for them than he did." Dkt. 29 at 11.

He is correct that courts in this Circuit "have routinely found that the failure by a defendant to disclose the presence of toxins—an omission that caused the plaintiff to overpay—is sufficient for alleging an economic injury-in-fact." Dkt. 29 at 11. But the cases he cites reveal why he did not suffer this type of injury. The court in *In re Plum Baby Food Litig.* denied an injury via overpayment theory allegation because the plaintiffs failed

> to allege anything beyond threadbare 'but-for' assertions: If Plaintiff had known that the Plum Baby Foods she purchased contained heavy metals she would not have purchased or would not have paid as much for the Plum Baby Foods. They do not specify any alternative, cheaper products, or allege that they have spent time or money acquiring any alternative products.

637 F. Supp. 3d 210, 226 (D.N.J. 2022) (internal quotation marks omitted).

Krakauer suffers the same fatal defects: his bald assertion that he would have paid less or not purchased the raincoat is unaccompanied by facts showing what cheaper alternative products he might have purchased. A chart in his complaint compares some of the jackets TFF tested with other brand jackets, but it does not include Krakauer's jacket and it does not include prices. Dkt. 19 ¶ 72.  Krakauer also cites *Cole v. Keystone RV Co.*, No. C18-5182RBL, 2020 WL 3969993, at *2 (W.D. Wash. July 14, 2020). There the plaintiff alleged that the vehicle air quality and mold caused physical injuries as well as

1  an economic injury. In contrast, Krakauer does not assert that his raincoat caused him any

2  physical harm.

3       Krakauer also relies on *Berke v. Whole Foods Mkt., Inc*., No. CV 19-7471 PSG

4  (KSX), 2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020). There, the plaintiff

5  successfully provided facts showing the water he purchased had more arsenic than other

6  water on the market:

7       The [complaint] sufficiently alleges that Starkey Water in general contains
     higher levels of arsenic as compared with other bottled water on the market

8       (even if all Starkey bottles do not contain arsenic above the federal limit).
     While there is some ambiguity in the pleadings as to the quality of each and

9       every Starkey bottle, reading the allegations in the light most favorable to
     Plaintiff, the [complaint] has sufficiently alleged that all Starkey Water had

10       comparatively high arsenic content to other bottles on the market, and
     Plaintiff would not have purchased or paid a premium for the product if he

11       had known this.

12  *Id*. at *7. In contrast, Krakauer fails to provide the Court sufficient facts that his jacket

13  contains PFAS and he offers no facts as to how his coat compares to others on the

14  market.

15       In sum, Krakauer fails to establish an economic injury-in-fact through an

16  "overpayment" theory for at least two reasons. First, he fails to provide enough facts to

17  plausibly allege that his raincoat contained dangerous toxins. Although the apparel that

18  TFF found contained dangerous PFAS meets this pre-requisite, Krakauer cannot himself

19  attain standing because he failed to establish that his raincoat is substantially similar to

20  apparel that TFF tested. He also fails to plausibly allege that safer alternatives to his

21  raincoat on the market exist as discussed in *In re Plum Baby Food Litig.* and *Burke*.

22

**3.     Krakauer fails to establish injury through a "benefit of the bargain" theory**

Krakauer's second theory to establish injury is benefit of the bargain: he argues that he "bargained for Products that were sustainable and safe, based on the representations made by Defendant, when the Products were neither sustainable nor safe due to the presence of PFAS." Dkt. 28 at 12. He argues further that "Product safety can be determined to be part of the bargain regardless of whether Defendant explicitly stated that its Product were safe, because Defendant omitted the presence of PFAS." *Id*. at 12–13. He asserts that his raincoat is not "sustainable" because "apparel produced with such high levels of organic fluorine is not responsibly sourced and is not compostable." Dkt. 19, ¶ 20.

Again, this type of injury is sound in theory, but Krakauer falls short of providing the facts necessary to sustain it. A plaintiff "must do more than allege that [he] 'did not receive the benefit [he] thought [he] was obtaining.' The plaintiff must show that [he] did not receive a benefit for which [he] actually bargained." *McGee v. S-L Snacks Natl*., 982 F.3d 700, 706 (9th Cir. 2020). "To adequately plead that something was a part of the bargain, the plaintiff must identify a specific misrepresentation about the elusive benefit, which allegedly was baked into the purchase price of the consumer item at issue." *Solis* 2023 WL 2394640 at *6 (internal quotation marks and citation omitted). A plaintiff is precluded from the "benefit of the bargain" theory where "(1) there is no identifiable misrepresentation concerning the purported benefit of which the plaintiff was allegedly

1    deprived and (2) the product's labeling or packaging discloses the alleged benefit is not

2    part of the bargain." *Id*. at *7.

3         Krakauer is correct that fundamental safety of apparel can generally be assumed to

4    be part of the bargain. However, as has been established, he did not plausibly allege that

5    his jacket contains unsafe PFAS. Even if he had, given that Krakaeur relied on REI's

6    disclosure that it sometimes uses short-chain PFAS treatments, Dkt. 19, ¶ 55, and the fact

7    that the coat tags are silent on PFAS use, a completely PFAS-free product was not a part

8    of the bargain. The court's reasoning in *In re Plum Baby Food Litig*. is instructive on this

9    point. The court there rejected a similar attempt by a plaintiff to assume from the

10   defendant's general statements about a products healthfulness that it did not include a

11   harmful ingredient:

12          Plaintiffs assert that they believed the products were "safe" for babies,
            which is fairly nonspecific, and point to claims that relate to Defendants'
13          advertising and labeling related to its organic, non-GMO ingredients, that
            the products were labeled as "perfect," "nutritious," and "packed with
14          essential vitamins and minerals." None of these descriptors relate to heavy
            metals. Nor do Plaintiffs contest that any of these specific claims are not
15          true: there are no allegations that the baby food products at issue do not
            contain the vitamins and minerals that they claim to contain, nor do they
16          contest that the ingredients are not non-GMO or not organic. All of these
            claims could be true even with the presence of heavy metals within the
17          products.

18   637 F. Supp. 3d at 224–25 (internal citations omitted).

19        Krakauer similarly attempts to use fairly nonspecific assertions from REI

20   regarding sustainability and safety to support his assertion that he believed a PFAS-free

21   coat was part of the bargain. None of the text in his raincoat's labeling relates to PFAS.

22   *See* Dkt. 23 at 18–19. The assertion from REI on its products page that it eliminated long

1    chain PFAS is sufficiently specific to constitute part of the bargain, but he did not test his

2    jacket for long chain PFAS. Even if the jacket does contain some short chain PFAS, as

3    REI's products page warns is possible, the "claims" about the jacket's functionality on its

4    tags could still be true even with the presence of some short chain PFAS.

5           Krakauer also fails to establish that his expectations about the jacket's

6    sustainability was a part of the bargain. Krakauer did not offer facts that REI advertised

7    his XeroDry raincoat as sustainable let alone compostable. The tags associated with the

8    coat tout only it's design and ability to protect against weather. Dkt. 23 at 18–19. The

9    other corporate statements that Krakauer points to about sustainability are not tied to his

10   rain jacket and are non-actionable puffery. *See, e.g.*, Dkt. 19 ¶ 49 ("REI claims that it has

11   been 'working to help you experience the transformational power of nature' since 1938.

12   REI further claims that 'with every purchase you make with REI, you are choosing to

13   steward the outdoors, support sustainable business and help the fight for life outside.'")

14   Courts consistently reject attempts to use aspirational corporate statements as actionable

15   for product liability. *See, e.g., Hydro-Blok USA LLC v. Wedi Corp.,* C15-671 TSZ, 2019

16   WL 2515318 (W.D. Wash. June 18, 2019) ("environmentally friendly" did "not have the

17   requisite specificity to be actionable under" the CPA), *aff'd in part and rev'd on other*

18   *grounds and remanded sub nom.*, 840 Fed. App'x 272 (9th Cir. 2021).

19          Krakauer's attempt to point to the facts that REI products are Fair Trade

20   Certified®, that some contain "bluesign® approved materials," and that REI is a member

21   of the "Sustainable Apparel Coalition," also fail to render his assumption that his jacket

22   was PFAS-free was "part of the bargain." He does not dispute that REI has met the

1   requirements for such certifications and memberships. The "Fair Trade Certified®" and

2   the "Sustainable Apparel Coalition" do not say anything about PFAS. Krakauer admits

3   that bluesign® "restricts 140 of 9,000 known manufactured PFAS," and does not identify

4   any allegedly dangerous PFAS that it does not prohibit. Dkt. 19, ¶ 63. In any event,

5   Krakauer's raincoat is not bluesign® certified. In the parlance of the law, there are "no

6   identifiable misrepresentations concerning the purported benefit" of sustainability that

7   Krakauer says he was deprived of. The fact that his coat is allegedly not compostable or

8   sustainably sourced was therefore not a part of the "bargain."

9        In sum, without sufficient facts to support his allegation that his raincoat

10  contained dangerous PFAS or to show that REI made specific assurances regarding the

11  jacket's being sustainably sourced or compostable, Krakauer received what he bargained

12  for in exchange for the purchase price: a functional raincoat. *See Renfro v. Champion*

13  *Petfoods USA, Inc*., 25 F.4th 1293, 1305 (10th Cir. 2022) (affirming dismissal where

14  plaintiffs "failed to allege they purchased any contaminated dog food," but only "that

15  they purchased dog food that was at risk of contamination," which was "insufficient for

16  standing").

17  **B.    Dismissal is also warranted under 12(b)(6): Krakauer fails to meet the
    heightened pleading standards for fraud claims**

18
19       Because Krakauer lacks standing, the Court technically does not need to address

20  the additional grounds for dismissal raised by REI. *See Solis*, 2023 WL 2394640, at *4.

21  Nevertheless, in the interest of streamlining issues if Krakauer submits a second amended

22  complaint, the Court addresses the deficiencies under Rule 12(b)(6).

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's

complaint must allege facts to state a claim for relief that is plausible, meaning that he

"pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. Although courts must accept as true

the complaint's well-pleaded facts, conclusory allegations of law and unwarranted

inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez*

*v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

Fraud claims require plaintiffs to provide the court with still more facts to survive

dismissal. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."). When alleging

affirmative fraud, a "plaintiff must set forth what is false or misleading about a statement,

and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

When fraud occurred by omitting critical information, "plaintiff[s] must describe the

content of the omission and where the omitted information should or could have been

revealed, as well as provide representative samples of advertisements, offers, or other

representations that plaintiff relied on to make her purchase and that failed to include the

allegedly omitted information." *Eisen v. Porsche Cars North Am*., 2012 WL 841019 *3

(C.D. Cal. Feb. 22, 2012) (citation omitted).

Krakauer does not contest that his claims are grounded in fraud and his complaint

is consequently measured against Rule 9(b)'s heightened pleading standard. Dkt. 28 at 17

1  (REI's "marketing representations and omissions" are the "actual gravamen of the

2  case."); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

3      REI argues that Krakauer's failure to plausibly allege that his XeroDry raincoat

4  contains dangerous PFAS dooms his fraud claims: "Without alleging the presence of a

5  chemical that customers actually care about, Plaintiff cannot plausibly allege that REI did

6  anything deceptive or had a duty to disclose the presence of such PFAS." *Id*.

7      The Court agrees. Krakauer's fraud by omission claims fail largely because he has

8  not plausibly alleged that his raincoat contained dangerous PFAS in quantities sufficient

9  to pose health risks. *See GlenFed,* 42 F.3d at *Inc. Sec. Litig.*, 42 F.3d 1541, 1549–53 (9th

10 Cir. 1994), *superseded by statute on other grounds as stated in Johnson v. Wal-Mart

11 Stores, Inc.*, 544 F. App'x 696 (9th Cir. 2013) 1549–53 (a plaintiff must "allege

12 evidentiary facts to support [his] theories of fraud."); *Fraker v. Bayer Corp.*, No. CV F

13 08-1564 AWI GSA, 2009 WL 5865687, at *8 (explaining that false advertising claims

14 under the FAL, CLRA, and UCL require the plaintiff to "plead[ ] facts to support an

15 allegation that [the] [d]efendant's advertising claims are false or misleading."). But

16 Krakauer's failure to plausibly allege that the coat contains dangerous PFAS is not his

17 only deficiency under rule 12(b)(6). His fraud by omission claims suffer additional

18 defects described below.

19      **1.     Because REI disclosed that it sometimes uses short chain PFAS
        treatments, Krakauer needs to plead what type of PFAS are in his jacket so REI can
20      defend that this disclosure and its marketing was not fraudulent**

21      "To comply with Rule 9(b), allegations of fraud must be specific enough to give

22 defendants notice of the particular misconduct which is alleged to constitute the fraud

charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007). Here, REI cannot meaningfully defend itself without knowing the chemical at issue so that it can prove that the chemical is not in the jacket, is not dangerous, and/or would not be material to reasonable consumers. *Leppert v. Champion Petfoods USA Inc., 2019 WL 216616, at *10* (N.D. Ill. Jan. 16, 2019) ("[W]ithout pleading what levels of heavy metals and/or BPA are considered safe for pets, Plaintiffs cannot establish that [defendant pet food manufacturer] made misrepresentations."). REI already notified consumers that its products might contain fluorine when it disclosed on its products page that it sometimes uses short chain PFAS treatments. Dkt. 19, ¶ 55. Without more facts from Krakauer showing that the jacket contained long chain or dangerous short chain PFAS, REI cannot defend that its was not fraudulent.

**2.      Krakauer lacks sufficient facts surrounding when he relied on REI's representations**

REI argues that Krakauer fails to provide sufficient facts about what representations he relied on and when he relied on them. It asserts "Plaintiff was required to specifically allege 'when he was exposed' to these statements, where he saw them, and 'which ones he found material.' *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Plaintiff does not even claim to have visited REI's website where these general marketing statements appear to have been located." Dkt. 23 at 30.

 Krakauer pleads that "[p]rior to his purchase, [he] reviewed the labeling, packaging, and marketing materials of his Product." Dkt. 19,  ¶ 23. He further clarifies

the time and place for this purchase: "In approximately Spring 2020" at "an REI store in Tacoma, Washington." *Id*. His complaint provides the representations he relied on, and specifies which he found material. *See, e.g.*, Dkt. 19, ¶ 55 ("This [statement] was important to Plaintiff's decision to purchase the Product.").

At this juncture, the Court is bound to consider the facts as alleged to be true and draw all reasonable inferences in Krakauer's favor. Even doing so, Krakauer did not provide adequate facts to clarify when and where he was exposed to each representation. He need not provide granular detail, but Rule 9 requires more than the bald assertion that he relied on the representation "before" his purchase. Krakauer does however sufficiently plead which representations he found material. For example, his assertion that REI's disclosure that it eliminated long chain PFAS and sometimes uses short chain PFAS treatments "was important to Plaintiff's decision to purchase the Product" is sufficient to clarify that the representation was material to his decision to purchase. Dkt. 19, ¶ 55.

**3.      The representations he relied on were non-actionable puffery that would not mislead the average consumer.**

With the exception of REI's assertion that it has eliminated long chain PFAS from its products, the representations Krakauer relies on are non-actionable puffery that would not mislead an average consumer. Where a court can conclude as a matter of law that a representation or omission does not have "the capacity to deceive a substantial portion of the public," dismissal at the pleading stage is appropriate. *Penner v. Chase Bank USA NA*, 457 F. App'x. 693 (9th Cir. 2011) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986)).

1    In response to REI's argument that the marketing he relied on was nonactionable

2  puffery, Krakauer argues the "specific marketing claims at issue" are that "Defendant

3  clearly states that it 'eliminated long-chain PFAS' from its waterproof REI Co-Op brand'

4  (FAC ¶ 10); that it 'put[s] sustainability at the center of how [it] makes products' (*id*. ¶

5  8); that it is 'Fair Trade Certified,' which means it 'focuses on "[s]afe working

6  conditions' and '[e]nvironmental protection' (*id*. ¶¶ 56, 59); and that it is bluesign®

7  certified. (*id*. ¶ 63)." Dkt. 29 at 19.

8    REI's statement about eliminating long chain PFAS is sufficiently specific to be

9  actionable, but not with regards to Krakauer's jacket based on his complaint. He did not

10  allege that this jacket contains long chain PFAS, nor provide sufficient facts to allege that

11  his jacket contained long chain PFAS. Consequently, he fails to state a claim that REI's

12  representation that it eliminated long chain PFAS fraudulently misled him. He did

13  provide facts that other REI jackets contain long chain PFAS through the TFF test, but as

14  is discussed *supra*, he did not establish that his jacket is substantially similar to those

15  jackets.

16    REI's statement that it "put[s] sustainability at the center of how [it] makes

17  products" is nonactionable puffery. It is aspirational, and Krakauer fails to provide

18  adequate facts to show that it has "capacity to deceive a substantial portion of the public"

19  that the XeroDry jacket is PFAS free. The fact that REI has Fair Trade and bluesign®

20  certifications are similarly incapable of fraudulently misleading the public into believing

21  that the XeroDry jacket is completely PFAS free. Fair Trade certification is silent on the

22  issues of PFAS, and the XeroDry Jacket is not bluesign® certified.

1    In sum, Krakauer's current complaint fails to meet Rule 9(a)'s specificity

2  requirements for fraud claims. Since Krakauer could allege additional facts to cure the

3  deficiencies set out in this order, leave to amend is appropriate. *See Knappenberger v.*

4  *City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

5                                **III.   CONCLUSION**

6    REI's Rule 12(b)(1) motion to dismiss Krakauer's Amended Complaint for lack of

7  subject-matter jurisdiction and its Rule 12(b)(6) motion to dismiss for failure to state a

8  claim, Dkt. 23, are **GRANTED**. Krakauer's claims as currently pled are **DISMISSED**

9  **without prejudice**.  Krakauer may file a second amended complaint correcting these

10  deficiencies **within 21 days of this order**.

11    **IT IS SO ORDERED**.

12    Dated this 29th day of March, 2024.

13

14

15                    BENJAMIN H. SETTLE
                      United States District Judge

16

17

18

19

20

21

22